# EXHIBIT 1



# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
JP MORGAN MORTGAGE ACQUISITION CORP; NATIONSTAR
MORTGAGE LLC and DOES 1-10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
RACHEL L JOHNSON

SUM-100

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
02/27/2025
By: _____ L. Stewart _____ Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Sacramento County Superior Court
720 9th St,
Sacramento, CA 95814

CASE NUMBER:
*(Número del Caso):*
25CV004759

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Tony Cara, CDLG, PC, 2973 Harbor Boulevard, Suite 594 Costa Mesa, CA 92626 (888) 615-6765

DATE:
*(Fecha)* 02/27/2025

Clerk, by
*(Secretario)* /s/ L. Stewart

, Deputy
*(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* NATIONSTAR MORTGAGE LLC

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
       ☒ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Tony Cara, Esq. (SBN: 170720) CDLG, PC<br>2973 Harbor Blvd., Suite 594, Costa Mesa, CA 92626<br>TELEPHONE NO.: 888-615-6765    FAX NO.: 888-660-8874<br>EMAIL ADDRESS: Litigation.CDLG@gmail.com<br>ATTORNEY FOR (Name): Plaintiff RACHEL L JOHNSON | **ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Sacramento<br>**02/27/2025**<br>By: _____ L. Stewart _____ Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
STREET ADDRESS: 720 9th St.
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME:

CASE NAME:
Johnson v. JP MORGAN MORTGAGE ACQUISITION CORP; et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount demanded exceeds $35,000) | [ ] Limited<br>(Amount demanded is $35,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 25CV004759<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[X] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (specify): 7
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 2/27/25

Tony Cara, Esq.
_____ (TYPE OR PRINT NAME)

*Tony Cara*
_____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
*case involves an uninsured*
*motorist claim subject to*
*arbitration, check this item*
*instead of Auto)*

**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or*
  *toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil*
  *harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer*
    *or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally*
  *complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent*
    *domain, landlord/tenant, or*
    *foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
  *drugs, check this item; otherwise,*
  *report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner
    Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex*
  *case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic*
    *relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-*
    *harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

| Print this form | Save this form | | Clear this form |

1 CDLG, PC
Tony Cara, Esq., SBN 170720
2 2973 Harbor Boulevard, Suite 594
3 Costa Mesa, CA 92626-3912
Phone: (888) 615-6765
4 Fax: (888) 660-8874
Litigation.CDLG@gmail.com
5 Attorney for Plaintiff, RACHEL L JOHNSON

ELECTRONICALLY FILED
Superior Court of California
County of Sacramento
02/27/2025
By: _____ L. Stewart _____ Deputy

6

7

8 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

10 COUNTY OF SACRAMENTO

11

12

13 RACHEL L JOHNSON,                          25CV004759

14          Plaintiff,
                                    VERIFICATION OF PLAINTIFFS
15                                  COMPLAINT

16 v.

17 JP MORGAN MORTGAGE ACQUISITION
CORP; NATIONSTAR MORTGAGE LLC
18 and DOES 1-10, inclusive,

19          Defendants.

20

21

22

23

24

25

26

27

28

VERIFICATION

I, RACHEL L JOHNSON, declare and say:

1.    I am the Plaintiff in the above-referenced matter.

2.    I am the owner of and have resided at the real property located at 6933 Black Duck Way, Sacramento, CA 95842. This is my personal and principal residence.

3.    I have reviewed the complaint drafted in my name, and I am aware of the statements made therein. I assert personal knowledge as to the facts contained within this complaint and assert that they are true and correct to the best of my knowledge.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

This declaration was executed on _February 26_, 2025, in Sacramento, California.


_R Johnson_
RACHEL L JOHNSON, Declarant

<table>
<tr><td colspan="2"><strong>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SACRAMENTO</strong></td><td>Court Use Only</td></tr>
</table>

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF SACRAMENTO** | Court Use Only |
|---|---|
| COURTHOUSE ADDRESS:<br>Gordon D. Schaber Superior Court<br>720 9th Street, Sacramento, CA 95814 | |
| PLAINTIFF/PETITIONER:<br>RACHEL L. JOHNSON | |
| DEFENDANT/RESPONDENT:<br>JP MORGAN MORTGAGE ACQUISITION CORP et al | |

| **NOTICE OF CASE ASSIGNMENT<br>AND CASE MANAGEMENT CONFERENCE<br>(UNLIMITED CIVIL CASE)** | CASE NUMBER:<br>25CV004759 |
|---|---|

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

## NOTICE OF CASE ASSIGNMENT

Pursuant to rule 3.734 of the California Rules of Court, this action is hereby assigned for limited purposes to the judicial officers indicated below:

| PURPOSE | ASSIGNED JUDGE | COURT LOCATION | DEPARTMENT |
|---|---|---|---|
| **LAW & MOTION** | Christopher E. Krueger | Hall of Justice | 54 |
| **CASE MANAGEMENT PROGRAM** | Richard C. Miadich | Gordon D. Schaber Superior Court | 28 |

Please refer to Chapter Two – Parts 3 and 4 of the Sacramento Superior Court Local Rules and the Court's website for additional filing instructions and hearing reservation information.

## NOTICE OF CASE MANAGEMENT CONFERENCE

### Hearing Date

The above entitled action has been set for a case management conference at **8:30 AM** on **March 20, 2026** in **Department 28** in accordance with California Rules of Court 3.722. You must be familiar with the case and fully prepared to participate effectively in the case management conference.

### Case Management Statement

All parties must file and serve a case management statement at least 15 calendar days before the case management conference. Parties are encouraged to file a single joint case management statement.

### Minimum Requirements

Prior to the filing of the case management statement, the parties should have done the following:

- Served all parties named in the complaint within 60 days after the summons has been issued
- Ensured that all defendants and cross-defendants have answered, been dismissed, or had their defaults entered
- Met and conferred with all parties as required by CRC 3.724 to discuss and resolve issues set forth therein.

**Tentative Ruling**

Following its review of the case management statement(s), the court may determine that a case management conference is not necessary. To determine whether an appearance is required, the parties must check the court's tentative rulings after 2:00 p.m. on the Court day before the Friday calendar by accessing the court's internet website at www.saccourt.ca.gov

**Remote Appearances**

Unless ordered to appear in person by the court, parties may appear remotely either telephonically or by video conference via the Zoom video/audio conference platform with notice to the court and all other parties in accordance with Code of Civil Procedure 367.75. If appearing remotely, parties are required to participate in their hearing using a device that has video and/or audio capability (i.e. computer, smartphone, or tablet). Although remote participation is not required, the court will presume all parties are appearing remotely for non-evidentiary civil hearings.

**Certification Filed in Lieu of Case Management Statement**

If parties in the action file a certification on a form provided by the court at least 15 calendar days prior to the date of the case management conference that the case is short cause (five hours or less of trial time), that the pleading stage is complete and that the case will be ready for trial within 60 days, the case will be exempted from any further case management requirements and will be set for trial within 60-120 days. The certification shall be filed in lieu of a case management statement.

**Case Management Orders**

At the case management conference, the court will consider whether the case should be ordered to judicial arbitration or referred to other forms of Alternative Dispute Resolution. Whether or not a case management conference is held, the court will issue a case management order shortly after the scheduled conference date.

**Service of Notice of Case Assignment and Case Management Conference**

Unless otherwise ordered by the court, plaintiff shall serve a copy of this notice on any party to the complaint appearing after the court issued this notice. The cross-complainant shall have the same obligation with respect to the cross-complaint.

**Compliance**

Failure to comply with this notice or to appear at the case management conference may result in the imposition of sanctions (including dismissal of the case, striking of the answer, or payment of money).

**Continuances**

Case management conference(s) will not be continued except on a showing of good cause. If your case management conference is continued on motion or by the court on its own motion all parties shall file and serve a new case management statement at least 15 calendar days before the continued case management conference.

Dated: 02/27/2025                    By:

/s/ L. Stewart
L. Stewart, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT**
**AND CASE MANAGEMENT CONFERENCE**
**(UNLIMITED CIVIL CASE)**

CDLG, PC
Tony Cara, Esq., SBN 170720
2973 Harbor Boulevard, Suite 594
Costa Mesa, CA 92626-3912
Phone: (888) 615-6765
Fax: (888) 660-8874
Litigation.CDLG@gmail.com
Attorney for Plaintiff, RACHEL L JOHNSON

ELECTRONICALLY FILED
Superior Court of California
County of Sacramento
02/27/2025
By: _____ L. Stewart _____ Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SACRAMENTO

25CV004759

| | |
|---|---|
| RACHEL L JOHNSON, | PLAINTIFF'S VERIFIED COMPLAINT FOR: |
| Plaintiff, | 1. **VIOLATION OF CIV. CODE § 2923.5;** |
| v. | 2. **VIOLATION OF CIV. CODE § 2923.6(c);** |
| | 3. **VIOLATION OF CIV. CODE § 2923.7;** |
| JP MORGAN MORTGAGE ACQUISITION | 4. **VIOLATION OF CIV. CODE § 2924.9;** |
| CORP; NATIONSTAR MORTGAGE LLC | 5. **VIOLATION OF CIV. CODE § 2923.6(e)(1)-(2);** |
| and DOES 1-10, inclusive, | 6. **UNFAIR BUSINESS PRACTICES, VIOLATION OF BUS. & PROF. CODE § 17200, ET SEQ.;** |
| Defendant(s). | 7. **WRONGFUL FORECLOSURE** |
| | (**Amount in controversy less than $75,000**) |

**COMES NOW** plaintiff Rachel L Johnson, ("PLAINTIFF"), by and through her counsel, allege as follows:

## PARTIES

1.     PLAINTIFF is, and at all relevant times mentioned herein was a resident of Sacramento County, California, and are the rightful and lawful owners of real property commonly known as 6933

PLAINTIFF'S VERIFIED COMPLAINT

1   Black Duck Way, Sacramento, CA 95842 ("Subject Property"), and is her personal and principal
2   residence.

3       2.      Defendant Nationstar Mortgage LLC., ("NS DEFENDANT") is a corporation with its
4   principal place of business in Irvine, CA. NS DEFENDANT conducts, and at all times mentioned
5   herein conducted, business in Sacramento County, California. NS DEFENDANT is the purported
6   current loan servicer of the mortgage loan that is the subject of the allegations complained of herein.

7       3.      Defendant JP MORGAN MORTGAGE ACQUISITION CORP, ("JP DEFENDANT") is
8   a securitized trust with its principal place of business in New York City, NY. JP DEFENDANT
9   conducts, and at all times mentioned herein conducted, business in Sacramento County, California.  JP
10  DEFENDANT is the purported current beneficiary of the mortgage loan that is the subject of the
11  allegations complained of herein.

12      4.      PLAINTIFF is ignorant of the true names and capacities of Defendants DOES 1-10,
13  inclusive, and therefore sues them by fictitious names. PLAINTIFF will amend this complaint to allege
14  DOES' true names and capacities when they are ascertained.

15      5.      PLAINTIFF alleges that DOES 1-10 claim some right, title, estate, lien or interest in the
16  Subject Property that is adverse to PLAINTIFF's own title. Each of these claims constitutes a cloud on
17  PLAINTIFF's title to the Subject Property from which they seek relief.

18      6.      PLAINTIFF alleges that DOES 1-10 are contractually, strictly, negligently, intentionally
19  or vicariously liable and/or otherwise legally responsible in some manner for each and every act,
20  omission, obligation, event or happening set forth in this complaint, and that DOES 1-10 are indebted
21  to PLAINTIFF as hereinafter alleged.

22                              **JURISDICTION AND VENUE**

23      7.      Jurisdiction of this Court arises under *Cal. Const. Art. VI §10* and *Code Civ.Proc.*
24  *§410.10 et seq.* because DEFENDANTS engaged in business in the State of California and the acts of
25  wrongdoing alleged in this complaint occurred in California. DEFENDANTS have more than
26  "sufficient minimum contacts" within the State of California such that this Court's exercise of personal
27  jurisdiction over DEFENDANTS herein "does not offend the traditional notions of fair play and
28  substantial justice." DEFENDANTS herein purposefully directed its/their activities to the State of

PLAINTIFF'S VERIFIED COMPLAINT

California and consummated a transaction with a resident of the State of California, such as PLAINTIFF herein. As a result, caused an event or events to occur in California, and more particularly in San Bernardino County, California, out of which this action arises and which forms the basis of this action.

8. Venue is proper in this Court pursuant to Code Civ.Proc. § 392(a) because DEFENDANTS' liability to PLAINTIFF arose within the jurisdictional region of this Court. This Court has jurisdiction over the parties. PLAINTIFF is a resident of Sacramento, California. All DEFENDANTS regularly engage in business within Sacramento County, California, and the real property is located in Sacramento County, California.

9. PLAINTIFF is suing for damages that are related to violation various California statutes and the Homeowner Bill of Rights Act wherein the amount of controversy is approximately $75,000.00 and/or according to proof.

## GENERAL AND FACTUAL ALLEGATIONS

10. PLAINTIFF alleges that on or about 4/18/2024, she obtained a mortgage loan on the Subject Property from Pinnacle Capital Mortgage Corp. in the amount of $146,300, memorialized by a Deed of Trust. This Deed of Trust was recorded in the Sacramento County, California Recorder's Office as Instrument No. 20140411 pg 471 on 4/11/2014. (**Exhibit "A", Deed of Trust**)

11. PLAINTIFF alleges there were various assignments of the deed of trust summarized as follows:

A On 11/15/2019 MERS for Pinnacle to PHH Mortgage, A copy is **Attached as Exhibit "B"**.

B. On 12/1/2020 PHH Mortgage to New Residential Mortgage, **Attached as Exhibit "C"**.

C. On 6/01/2022 New Residential Mortgage to US Bank Trust National Assn for RCF Aquisition et al, **Attached as Exhibit "D"**.

D. On 1/09/2023 US Bank Trust National Assn for RCF Acquisition Trust to JP MORGAN MORTGAGE , **Attached as Exhibit "E"**.

12.     PLAINTIFF alleges that on June 24, 2024, a Notice of Default and Election to Sell Under a Deed of Trust was recorded in the Sacramento County, California Recorder's Office as Instrument No. 202406240579, **Attached as Exhibit "F" hereto.**

13.     PLAINTIFF alleges that on 9/12/ 2024, a Notice of Trustee's Sale was recorded in the Sacramento County, California Recorder's Office as Instrument No. 202409240636.  **(See Exhibit "G", Notice of Trustee's Sale).** The sale date was set for 10/22/ 2024, and the Subject Property was sold on that date.

14.     PLAINTIFF alleges that on October 14, 2024, she submitted a Complete Request for Mortgage Assistance, ("RMA") to DEFENDANTS through her agent Non-Profit Alliance of Consumer Advocates ("NON-PROFIT"), and requested a single point of contact ("SPOC").

15.     DEFENDANTS failed to respond to any case file deficiencies and acknowledged receipt of said document on 10/14/24.

16.     DEFENDANTS failed to assign a single point of contact, to provide a written acknowledgement within 5 days of receiving the RMA, and failed to discuss alternatives to foreclosure with her.

17.     The file was confirmed to be in review on October 14, 2024.

18.     DEFENDANT failed to allow PLAINTIFF a right to appeal the denial of the RMA.

## CAUSES OF ACTION/REMEDIES

## FIRST CAUSE OF ACTION

## VIOLATION OF CIV.CODE §2923.5; FAILING TO NOTIFY THE HOMEOWNER ABOUT POSSIBLE FORECLOSURE AND TO WAIT 30 DAYS AFTER NOTICE TO RECORD A NOTICE OF DEFAULT

## (AGAINST ALL DEFENDANTS)

19.     PLAINTIFF re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

20.     Pursuant to Civ.Code §2923.5(a)(2), a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default pursuant to Section 2924 until all of

the following: Contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure, including advising the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose.

21.     On June 24, 2024, DEFENDANTS recorded a Notice of Default on the Subject Property. PLAINTIFF was staying in her home when the Notice of Default was issued, and received no mail or messages.

22.     DEFENDANTS failed to satisfy the requirements of Civ.Code §2923.5(a)(2) before recording a Notice of Default, and violated this statute.

23.     PLAINTIFF requests damages according to proof.

## SECOND CAUSE OF ACTION

## <u>VIOLATION OF CIV.CODE § 2923.6(c), FAILURE TO RESCIND FORECLOSURE EFFORTS AFTER LOAN MODIFICATION FILED</u>

### (AGAINST ALL DEFENDANTS )

24.     PLAINTIFF realleges and incorporate herein by reference the allegations made in paragraphs above inclusive, as though fully set forth herein.

25.     On October 14, 2024, PLAINTIFF submitted a Complete Loan Modification Application to DEFENDANTS, and requested the appointment of a Single Point of Contact ("SPOC"). **(See Exhibit "I")**

26.     On 6/24/2024 recorded a Notice of Default on the Subject Property. PLAINTIFF was staying in her home when the Notice of Default was issued, and received no mail or messages.

27.     On 9/24/2024, DEFENDANTS recorded a Notice of Trustee's Sale on the Subject Property.

28.     Pursuant to Civ.Code § 2923.6(c), "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower s mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or

notice of sale, or conduct a trustee s sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee s sale until any of the following occurs.

     (1)    The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

     (2)    The borrower does not accept an offered first lien loan modification within 14 days of the offer.

     (3)    The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower s obligations under, the first lien loan modification."

     (d)    If the borrower s application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer s determination was in error.

     (e)    If the borrower s application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee s sale until the later of:

     (1)    Thirty-one days after the borrower is notified in writing of the denial.

     (2)    If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower, or, if a first lien loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer.

     29.    DEFENDANTS as agents for each other violated Civ.Code § 2923.6(c) by failing to provide a determination prior to moving forward with the foreclosure sale.

     30.    PLAINTIFF civil damages and statutory penalties post-foreclosure against DEFENDANTS in an amount to be determined at trial according to proof.

///

///

///

## THIRD CAUSE OF ACTION

## VIOLATION OF CIV.CODE § 2923.7 – FAILURE TO ASSIGN A SINGLE POINT OF CONTACT

### (AGAINST ALL DEFENDANTS)

31.    PLAINTIFF realleges and incorporates all preceding paragraphs as though set forth fully herein. PLAINTIFF resides in said property as her principal place of residence.

32.    On October 14, 2024, PLAINTIFF submitted a Complete Loan Modification Application to DEFENDANTS, and requested the appointment of a Single Point of Contact ("SPOC").

33.    PLAINTIFF alleges that DEFENDANTS failed to assign a "SPOC" within a reasonable time after receipt of the loan modification application.

34.    PLAINTIFF continued to rely on the fact that her application was being reviewed.

35.    This is a material violation of Civ.Code §2923.7 because in failing to assign a SPOC, the entity has prevented PLAINTIFF'S chances for a successful submission of the proper papers to complete a loan modification package to save the Subject Property from foreclosure, and the resultant loss of equity and a place to live for PLAINTIFF and her dependents.

36.    PLAINTIFF requests an civil damages and statutory penalties post-foreclosure against SPS DEFENDANT in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF CIV.CODE §2924.9, FAILURE TO PROVIDE HOMEOWNER WITH FORECLOSURE ALTERNATIVES

### (AGAINST ALL DEFENDANTS)

37.    PLAINTIFF realleges and incorporates all preceding paragraphs as though set forth fully herein.

38.    On June 24 2024, DEFENDANTS recorded a Notice of Default on the Subject Property. PLAINTIFF was staying in her home when the Notice of Default was issued, and received no mail or messages.

39.    DEFENDANTS failed to notify PLAINTIFF of all foreclosure prevention alternatives within 5 business days after Notice of Default recorded, as required by Civ.Code §2924.9.

40.    PLAINTIFF was living in the Subject Property when the Notice of Default was recorded. PLAINTIFF did not receive any phone calls or phone messages, and did not receive any pieces of mail that referred to discussions about alternatives to foreclosure before it was commenced. If PLAINTIFF did receive such contact and communication, they would have taken action to avoid the foreclosure of the Subject Property with other lending sources.

41.    PLAINTIFF is entitled to civil damages and statutory penalties post-foreclosure against DEFENDANTS in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF CIV. CODE § 2923.6(e)(1 )-(2)-FAILURE TO PROVIDE RIGHT TO 30 DAY APPEAL AFTER LOAN MODIFICATION APPLICATION DENIED

### (AGAINST ALL DEFENDANTS)

42.    PLAINTIFF realleges and incorporate all preceding paragraphs as though set forth fully herein.

43.    On October 14, 2024, PLAINTIFF submitted a Complete Loan Modification Application to DEFENDANTS, and requested the appointment of a Single Point of Contact ("SPOC").

44.    If the borrower's application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee's sale until the later of:

a)    31 days after notifying the homeowner about the denial of a loan modification if no appeal is filed; or

b)    15 days after denying the homeowner's appeal; or

c)    14 days after a first lien loan modification is offered after appeal but the homeowner decline it; or

d)    If a first lien loan modification is offered and accepted after appeal, the date on which the homeowner fails to timely submit the first payment or otherwise breach the terms of the offer.

45.     DEFENDANTS failed to comply with Civ.Code § 2923.6(e)(1)-(2) by not granting PLAINTIFF a right to appeal the denial of the RMA.

46.     PLAINTIFF therefore seeks civil damages and statutory penalties post-foreclosure against DEFENDANTS in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICES, VIOLATION OF BUS. & PROF.CODE §17200, ET SEQ.

## (AGAINST ALL DEFENDANTS)

47.     PLAINTIFF realleges and incorporates all preceding paragraphs as though set forth fully herein.

48.     DEFENDANTS are engaged in the business of lending money for real property purchases and selling mortgages/deed of trust as secured loans, and or servicing those loans.

49.     PLAINTIFF alleges that SPS DEFENDANTS violated Bus. & Prof. Code §§ 17200, *et seq.*, by engaging in unlawful, unfair, and fraudulent business practices as alleged above.

50.     DEFENDANTS violated the Homeowners' Bill of Rights by failing to timely and fairly evaluate PLAINTIFF'S application for loan modification.

51.     PLAINTIFF alleges that DEFENDANTS negligently made false representations. DEFENDANTS' negligent conduct is likely to deceive members of the public generally because it/they offered modifications, but not actual assistance with such actions as described herein.

52.     PLAINTIFF alleges that DEFENDANTS violated the "unfair," "unlawful," and "fraudulent" prongs of the UCL resulting in injury and economic loss to PLAINTIFF when they:

    a.  Implemented a severely flawed loss mitigation review process in which borrowers, like PLAINTIFF, are persuaded to rely on DEFENDANT's loan modification review process;

    b.  The process is purposefully lengthy so that loss mitigation and loan modification will not be timely provided. DEFENDANTS purposefully caused a lengthy delay in order to cause PLAINTIFF and borrowers like PLAINTIFF to incur continuing interest charges that would otherwise be mitigated, late fees, and

ultimately foreclosure costs that would erode a borrower's equity or severely

diminish any possibility for future equity;

    c.  DEFENDANTS purposefully impeded timely loss mitigation denial or approval

while expressing that PLAINTIFF is in review prevents PLAINTIFF from

seeking other external loss mitigation options including abandoning the property

and/or short sale;

    d.  Ignored PLAINTIFF's communications and failed to communicate with

PLAINTIFF regarding the financial distress regarding mortgage loan repayment;

    e.  Purposely violated Civ. Code §§2923.5, 2923.6(c), 2923.7, 2924.9 and

2923.6(e)(1)-(2).

53.    These acts and more are unlawful and unfair conduct has caused substantial harm to PLAINTIFF and the California citizenry at large.

54.    A borrower may bring an unfair claim per the statute by alleging that a servicer's statements or conduct was misleading.

55.    In the present case, the information provided to PLAINTIFF was certainly misleading and not consistent as to the status of the loan modification and what she was supposed to do to satisfy the lender's demands.

56.    PLAINTIFF has suffered an actual, pecuniary injury of the loss of the equity in the value of the Subject Property, and the costs of seeking a remedy for DEFENDANTS wrongful actions.

57.    Under the three-factor analysis test found in *Zuniga v. Bank of America, N.A.,* 2014 WL 7156403 (C.D. Cal. Dec. 9, 2014), PLAINTIFF has stated a viable UCL claim.

58.    PLAINTIFF demand restitution, and that DEFENDANTS disgorge its/their illicit profits and that PLAINTIFF receive all monetary awards statutorily due to them.

### **SEVENTH CAUSE OF ACTION**

### **WRONGFUL FORECLOSURE**

(AGAINST ALL DEFENDANTS)

59.    PLAINTIFF realleges and incorporates all preceding paragraphs as though set forth fully herein.

PLAINTIFF'S VERIFIED COMPLAINT

61. DEFENDANTS wrongfully foreclosed on the Subject Property based upon violations of Civ.Code §2923.5 and 2924.9, 2923.6, 2923.7

62. DEFENDANTS caused an illegal, fraudulent, or willfully oppressive sale of the Subject Property pursuant to a power of sale in a mortgage or deed of trust.

63. PLAINTIFF suffered prejudice or harm as a result of the wrongful foreclosure trustee sale.

64. PLAINTIFF is excused from the tender requirement because of DEFENDANTS' and violations of Civ.Code §2923.5 and §2924.9.

65. PLAINTIFF alleges that the foreclosure sale was oppressive and illegal as the loan modification submitted by PLAINTIFF believed the loan modification had been approved.

66.. PLAINTIFF is entitled to monetary damages for the loss of the Subject Property and his investment in it.

67. PLAINTIFF is entitled to have the wrongful foreclosure vacated, and have the Trustee's Deed Upon Sale, Notice of Default and Notice of Trustee's Sale cancelled.

68. PLAINTIFF requests that the foreclosure sale be set aside and title restored to PLAINTIFF.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray for judgment

1. For restitution and the disgorgement of profits;

2. For an injunction stopping the violations of the HBOR statutes;

3. For an Order vacating the wrongful foreclosure;

4. For reasonable costs of suit pursuant to Code Civ.Proc. § 1032;

5. For recompense of damages and arrears; and

6. For any other relief as it may deem just and proper.

11

DATED: February 20, 2025       CDLG, PC

BY: _____
Tony Cara, Esq.
Attorney for Plaintiff, Rachel L Johnson

PLAINTIFF'S VERIFIED COMPLAINT

EXHIBIT "A"

FIRST AMERICAN TITLE COMPANY

3407- 8082278d

Recording Requested By:
PINNACLE CAPITAL MORTGAGE
CORPORATION

And After Recording Return To:
PINNACLE CAPITAL MORTGAGE
CORPORATION
3010 LAVA RIDGE COURT, SUITE 220
ROSEVILLE, CALIFORNIA 95661
Loan Number: 1010001184

Sacramento County Recorder
David Villanueva, Clerk/Recorder
BOOK 20140411 PAGE 0471
Check Number 2835
Friday, APR 11, 2014 11:18:13 AM
Ttl Pd    $53.00    Rcpt # 0008171089
ARR/26/1-15

———————— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST

**MIN:** 100728700002050254                MERS Phone: 888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated APRIL 8, 2014          , together with all Riders to this document.
**(B)** "Borrower" is    RACHEL L. JOHNSON,    AN UNMARRIED WOMAN.

Borrower is the trustor under this Security Instrument.
**(C)** "Lender" is PINNACLE CAPITAL MORTGAGE CORPORATION

Lender is a   CALIFORNIA CORPORATION                                    organized
and existing under the laws of   CALIFORNIA
Lender's address is   3010 LAVA RIDGE COURT, SUITE 220, ROSEVILLE,
CALIFORNIA 95661

**(D)** "Trustee" is   FIRST AMERICAN TITLE INSURANCE COMPANY
3 FIRST AMERICAN WAY, SANTA ANA, CALIFORNIA 92707

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** "Note" means the promissory note signed by Borrower and dated APRIL 8, 2014



The Note states that Borrower owes Lender ONE HUNDRED FORTY-SIX THOUSAND THREE HUNDRED AND 00/100 Dollars (U.S. $ 146,300.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MAY 1, 2044 .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property.".

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Planned Unit Development Rider
☐ Balloon Rider      ☐ Biweekly Payment Rider
☐ 1-4 Family Rider      ☐ Second Home Rider
☐ Condominium Rider      ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of

*DocMagic eForms*
www.docmagic.com



the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
**COUNTY** of **SACRAMENTO** :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.
A.P.N.: 219-0261-007-0000

which currently has the address of  6933 BLACK DUCK WAY
[Street]

SACRAMENTO , California 95842 ("Property Address"):
[City]                                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender



*DocMagic EForms*
*www.docmagic.com*

may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.  Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3.  Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

*DocMagic eFormas*
*www.docmagic.com*



The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

   **4.   Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

   **5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed

*DocMagic* *eForms*
www.docmagic.com



by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

DocMagic *€Forms*
www.docmagic.com



Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.


DocMagic *eFerms*
www.docmagic.com



Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to


*DocMagic* *ERRORS*
www.docmagic.com

Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to


DocMagic eForms
www.docmagic.com

Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

    **16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

    As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

    **17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

    **18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations

*DocMagic* ℰℱℴ𝓇𝓂𝓈
www.docmagic.com



secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



DocMagic *eForms*
www.docmagic.com

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.


DocMagic *eForms*
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

_____ (Seal)          _____ (Seal)
RACHEL L. JOHNSON            -Borrower                                                        -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                                        -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                                        -Borrower

DocMagic EForms
www.docmagic.com



──────── [Space Below This Line For Acknowledgment] ────────

State of ___CALIFORNIA___ )
 ) ss.
County of ___Placer___ )

On ___4|8|14___ before me, _Janie Wood, Notary Public_

personally appeared ___RACHEL L. JOHNSON___

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



NOTARY SIGNATURE

_Janie Wood_
(Typed Name of Notary)

NOTARY SEAL

JANIE WOOD
Commission # 1915908
Notary Public - California
Sacramento County
My Comm. Expires Dec 9, 2014

Loan Originator: LYLE INNOCENT, NMLSR ID 291048
Loan Originator Organization: ALPINE MORTGAGE PLANNING, NMLSR ID 81395
CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                      Page 14 of 14

DocMagic EForms
www.docmagic.com



**Exhibit "A"**

**Legal Description**

A.P.N.: 219-0261-007-0000

Real property in the City of Sacramento, County of Sacramento, State of California, described as follows:

LOT 156, AS SHOWN ON THE "PLAT OF HILLSDALE UNIT NO. 28," RECORDED IN BOOK 109 OF MAPS, MAP NO. 11, RECORDS OF SAID COUNTY.

219-0261-007

# EXHIBIT "B"



[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.
[AND WHEN RECORDED MAIL TO]
PHH Mortgage
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

**Sacramento County**
**Donna Allred, Clerk/Recorder**

| Doc # **201911190002** | Fees | $95.00 |
|---|---|---|
| 11/19/2019 8:03:40 AM | Taxes | $0.00 |
| JLW Electronic | PCOR | $0.00 |
| Titles 1 | Paid | $95.00 |
| Pages 1 | | |

## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR PINNACLE CAPITAL MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to **PHH MORTGAGE CORPORATION, A NEW JERSEY CORPORATION, WHOSE ADDRESS IS 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407 (800)449-8767, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by **RACHEL L. JOHNSON** and recorded on 04/11/2014 as **Book 20140411 and Page 0471** in the office of the **SACRAMENTO** County Recorder, **CA**.

IN WITNESS WHEREOF, this Assignment is executed **this 18th day of November in the year 2019**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR PINNACLE CAPITAL MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS**

*Cmalliet*

**CARLY MALLIET**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

### ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 18th day of November in the year 2019, by Carly Malliet as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR PINNACLE CAPITAL MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

*Julie Martens*

**JULIE MARTENS**
**COMM EXPIRES: 5/22/2022**

JULIE MARTENS
Notary Public - State of Florida
Commission # GG 221059
My Comm. Expires May 22, 2022
Bonded through National Notary Assn.

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
PHH02 409240216 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) OCWEN-NVLER MIN 100727000002050254 MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 DOCR T181911-10:50:30 [C-1] EFRMCA1





*D0043344200*

EXHIBIT "C"

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.
[AND WHEN RECORDED MAIL TO]
PHH Mortgage Corporation
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683



**Sacramento County**
**Donna Allred, Clerk/Recorder**

| Doc # **202012011992** | | Fees | $98.00 |
|---|---|---|---|
| 12/1/2020 | 3:41:18 PM | Taxes | $0.00 |
| JDH | Electronic | PCOR | $0.00 |
| Titles | 1 | Paid | $98.00 |
| Pages | 2 | | |

## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **PHH MORTGAGE CORPORATION, WHOSE ADDRESS IS 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407,** (ASSIGNOR) by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to **NEW RESIDENTIAL MORTGAGE LLC, WHOSE ADDRESS IS 1345 AVENUE OF THE AMERICAS, 45TH FL, NEW YORK, NY 10105 (866)317-2347, ITS SUCCESSORS AND ASSIGNS,** (ASSIGNEE).

Said Deed of Trust made by **RACHEL L JOHNSON** and recorded on 04/11/2014 as **Book 20140411 and Page 0471** in the office of the **SACRAMENTO** County Recorder, **CA.**

IN WITNESS WHEREOF, this Assignment is executed **this 08th day of November in the year 2020**

PHH MORTGAGE CORPORATION

*Jessica Reaves*
_____
**JESSICA REAVES**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

PHH03 416883252 PHH03-NRMSHELL0901    DOCR T082011-09:03:58 [C-2] EFRMCA1

*D0062991949*

## ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 08th day of November in the year 2020, by Jessica Reaves as VICE PRESIDENT of PHH MORTGAGE CORPORATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**VALERA KRISTOF**
**COMM EXPIRES: 09/19/23**



VALERA KRISTOF
NOTARY PUBLIC
STATE OF FLORIDA
COMM# GG 914976
EXPIRES: 09/19/2023

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
PHH03 416883252 PHH03-NRMSHELL0901   DOCR T082011-09:03:58 [C-2] EFRMCA1

*D0062991949*

# EXHIBIT "D"



**Sacramento County**
**Donna Allred, Clerk/Recorder**

Doc # **202206130147**

| | | Fees | $98.00 |
|---|---|---|---|
| 6/13/2022 | 8:54:16 AM | Taxes | $0.00 |
| MEC | Electronic | PCOR | $0.00 |
| Titles | 1 | | |
| Pages | 2 | Paid | $98.00 |

Prepared By and Return To:
Maged Farag
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

Space above for Recorder's use



17307978

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, NEW RESIDENTIAL MORTGAGE LLC, whose address is 1345 AVENUE OF THE AMERICAS, 46TH FLOOR, NEW YORK, NY 10105, (ASSIGNOR), does hereby grant, assign and transfer to U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST, whose address is C/O SELENE FINANCE LP, 9990 RICHMOND AVE., SUITE 400 SOUTH, HOUSTON, TX 77042, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 4/8/2014
Original Loan Amount: $146,300.00
Executed by (Borrower(s)): RACHEL L. JOHNSON
Original Trustee: **FIRST AMERICAN TITLE INSURANCE COMPANY**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR PINNACLE CAPITAL MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book 20140411, Page 0471
Document/Instrument No: N/A in the Recording District of **Sacramento, CA**, Recorded on 4/11/2014.

Property more commonly described as: 6933 BLACK DUCK WAY, SACRAMENTO, CALIFORNIA 95842

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: JUN 0 1 2022

**NEW RESIDENTIAL MORTGAGE LLC, BY NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, AS ATTORNEY IN FACT**

By: STEPHANIE N WESSEL
Title: MANAGER

Witness Name: Jennifer Smith

4192280

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of      **SOUTH CAROLINA**
County of     **GREENVILLE**

On **JUN 0 1 2022**, before me, **Joseph Cooper**, a Notary Public, personally appeared **STEPHANIE N WESSEL, MANAGER of/for NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, AS ATTORNEY IN FACT FOR NEW RESIDENTIAL MORTGAGE LLC,** personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **SOUTH CAROLINA** that the foregoing paragraph is true and correct. I further certify STEPHANIE N WESSEL, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **Joseph Cooper**
My commission expires: _____

> JOSEPH COOPER
> Notary Public, State of South Carolina
> My Commission Expires 08/10/2030

4192280

EXHIBIT "E"



**Sacramento County**
**Donna Allred, Clerk/Recorder**

Doc # **202301260095**

| 1/26/2023 | 8:33:05 AM | Fees | $98.00 |
| BML | Electronic | Taxes | $0.00 |
| Titles | 1 | PCOR | $0.00 |
| Pages | 2 | Paid | $98.00 |

Prepared By and Return To:
Karine Sharma
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

_____ Space above for Recorder's use _____



18281054

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST**, whose address is C/O SELENE FINANCE LP, 9990 RICHMOND AVE., SUITE 400 SOUTH, HOUSTON, TX 77042, (ASSIGNOR), does hereby grant, assign and transfer to **J.P. MORGAN MORTGAGE ACQUISITION CORP.**, whose address is 383 MADISON AVENUE, 8TH FLOOR, NEW YORK, NY 10179, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 4/8/2014
Original Loan Amount: $146,300.00
Executed by (Borrower(s)): RACHEL L. JOHNSON
Original Trustee: **FIRST AMERICAN TITLE INSURANCE COMPANY**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR PINNACLE CAPITAL MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book 20140411, Page 0471
Document/Instrument No: N/A in the Recording District of Sacramento, CA, Recorded on 4/11/2014.

Property more commonly described as: **6933 BLACK DUCK WAY, SACRAMENTO, CALIFORNIA 95842**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____ **JAN 0 9 2023** _____

**U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST, BY SELENE FINANCE LP, ITS ATTORNEY-IN-FACT**

By: _____ Matt Wylie _____
Title: AUTHORIZED SIGNER

Witness Name: _____ Erika Castillo _____

4192280

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of     TEXAS _SLW_

County of    ~~HARRIS~~ Dallas

On _____ JAN 0 9 2023 _____, before me, Suzanne Lynn Walker _____, a Notary Public, personally appeared _____ Matt Wylie _____, **AUTHORIZED SIGNER of/for SELENE FINANCE LP, AS ATTORNEY-IN-FACT FOR U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST,** personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the foregoing paragraph is true and correct. I further certify _____ Matt Wylie _____, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_(signature)_

(Notary Name): _Suzanne Lynn Walker_

My commission expires: _____ APR 2 5 2026 _____

_(Notary seal: SUZANNE LYNN WALKER, NOTARY PUBLIC, STATE OF TEXAS, ID 133726398, EXP 04-25-2026)_

4192280

# EXHIBIT "F"

RECORDING REQUESTED BY:
ZBS Law, LLP

WHEN RECORDED MAIL TO:

ZBS Law, LLP
30 Corporate Park, Suite 450
Irvine, CA 92606



**Sacramento County**
**Donna Allred, Clerk/Recorder**

| Doc # | 202406240579 | | |
|---|---|---|---|
| | | Fees | $107.00 |
| 6/24/2024 | 2:34:58 PM | Taxes | $0.00 |
| BML | Electronic | PCOR | $0.00 |
| Titles | 1 | Paid | $107.00 |
| Pages | 5 | | |

TS No.: 24-69129
APN: 219-0261-007-0000

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다ᄃ
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is __$8,619.93__ as of ___6/21/2024___, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or mortgage, the Beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or mortgagee may mutually agree in writing prior to the time

the Notice of Sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) Provide additional time in which to cure the default by transfer of the property or otherwise; or (2) Establish a schedule of payments in order to cure your default; or, both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

**J.P. Morgan Mortgage Acquisition Corp.**
**C/O Nationstar Mortgage LLC**
**Phone: 888-699-5600**
**C/O ZBS Law, LLP**
**30 Corporate Park, Suite 450**
**Irvine, CA 92606**
**Phone: (714) 848-7920**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. **Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That **ZBS LAW, LLP** is either the original Trustee, the duly appointed substituted Trustee, or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated **4/8/2014, executed by RACHEL L JOHNSON, AN UNMARRIED WOMAN, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR PINNACLE CAPITAL MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS as Beneficiary, recorded 4/11/2014, in Book 20140411, Page 0471, THE SUBJECT DEED OF TRUST WAS MODIFIED BY LOAN MODIFICATION AGREEMENT RECORDED AS INSTRUMENT 202111151816 AND RECORDED ON 11/15/2021., of Official** Records in the Office of the Recorder of **Sacramento County, California** describing land therein as: **As more fully described on said Deed of Trust.**

The subject obligation includes **NOTE(S) FOR THE ORIGINAL sum of $146,300.00.** A breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

**The monthly installment which became due on 12/1/2023, along with late charges, and all subsequent monthly installments.**

**You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to; foreclosure trustee fees and costs, advances and late charges.**

**Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
TS No. 24-69129

**Nothing in this Notice of Default should be construed as a waiver of any fees owing to the beneficiary under the Deed of Trust, pursuant to the terms and provisions of the loan documents.**

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

This office is enforcing a security interest of your creditor. To the extent that your obligation has been discharged by a bankruptcy court or is subject to an automatic stay of bankruptcy, this notice is for informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

**The loan servicer has fulfilled its obligation under either California Civil Code section 2923.5 or 2923.55 (as applicable). Please see Declaration of Compliance attached hereto.**

**Dated: 6/21/2024**

ZBS LAW, LLP , as Trustee

Ryan Bradford, Trustee Sale Officer

Borrower(s): RACHEL L. JOHNSON
Property Address: 6933 BLACK DUCK WAY SACRAMENTO CA 95842
Trustee's Sale No.:

### CALIFORNIA DECLARATION OF COMPLIANCE
### (CAL. CIV. CODE § 2923.55)

The undersigned, as an authorized agent or employee of the below mortgage servicer, declares as follows:

1. [ ] The mortgage servicer has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55(b)(2). Thirty days have passed since the initial contact was made.

2. [X] The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code § 2923.55(f) but has not made contact despite such due diligence. Thirty days have passed since these due diligence efforts were satisfied.

3. [ ] No contact was required because the individual did not meet the definition of "borrower" under California Civil Code § 2920.5(c).

4. [ ] The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on "owner-occupied" or qualifying tenant-occupied residential real property as defined by California Civil Code § 2924.15.

Additionally, pursuant to California Civil Code § 3273.10:

1. [X] The requirements of California Civil Code § 3273.10 do not apply because the borrower has not requested a forbearance related to a COVID-19 hardship.

2. [ ] The requirements of California Civil Code § 3273.10 do not apply because the mortgage servicer has not denied the borrower a forbearance request on or after 8/31/2020.

3. [ ] The requirements of California Civil Code § 3273.10 do not apply because the mortgage or deed of trust is not secured by residential property containing four dwelling units or less.

4. [ ] The requirements of California Civil Code § 3273.10 do not apply because the borrower was not current on payment as of 2/1/2020.

5. [ ] The mortgage servicer has denied the borrower a forbearance request on or after 8/31/2020, and a forbearance was not subsequently provided. A copy of the denial notice is attached.

6. [ ] The mortgage servicer has denied the borrower a forbearance request on or after 8/31/2020, however, a forbearance was subsequently provided. A copy of the initial denial notice is attached.

7. [ ] The mortgage servicer is in compliance with California Civil Code § 3273.10 because the mortgage servicer has complied with the relevant provisions regarding forbearance in Section 4022 of the federal Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) (Public Law 116-136), including any amendments or revisions to those provisions, pursuant to California Civil Code § 3273.10(d).

I certify that this declaration is accurate, complete, and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Nationstar Mortgage LLC as attorney in fact for J.P. Morgan Mortgage Acquisition Corp.

Dated: 5/1/2024

_____
Signature of Agent or Employee

Jeannetta Willis
_____
Printed Name of Agent or Employee

ATTACHMENT TO NOTICE OF DEFAULT

# EXHIBIT "G"



**Sacramento County**
**Donna Allred, Clerk/Recorder**
Doc # **202409240636**   Fees        $101.00
9/24/2024    2:57:10 PM      Taxes       $0.00
SCR          Electronic       PCOR        $0.00
Titles       1
Pages        3                Paid        $101.00

[RECORDING REQUESTED BY]
ZBS Law, LLP

[WHEN RECORDED MAIL TO:]
ZBS Law, LLP
30 Corporate Park, Suite 450
Irvine, CA 92606



T.S. No. 24-69129            APN: 219-0261-007-0000

[SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY]

# NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 4/8/2014. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**Trustor: RACHEL L JOHNSON, AN UNMARRIED WOMAN**
Duly Appointed Trustee: ZBS LAW, LLP  Deed of Trust recorded 4/11/2014, in Book 20140411, Page 0471, THE SUBJECT DEED OF TRUST WAS MODIFIED BY LOAN MODIFICATION AGREEMENT RECORDED AS INSTRUMENT 202111151816 AND RECORDED ON 11/15/2021., of Official Records in the office of the Recorder of Sacramento County, California,
Date of Sale:**10/22/2024 at 1:30 PM**
Place of Sale:     East Entrance County Courthouse, 720 9th St, Sacramento, CA 95814
Estimated amount of unpaid balance and other charges: **$159,400.55**

Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt owed.

Street Address or other common designation     **6933 BLACK DUCK WAY**
of real property:     **SACRAMENTO, CALIFORNIA 95842**
Described as follows:
As more fully described on said Deed of Trust.

A.P.N #.: **219-0261-007-0000**
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (866) 266-7512 or visit this internet website www.elitepostandpub.com, using the file number assigned to this case 24-69129. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

NOTICE TO TENANT: You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call (866) 266-7512, or visit this internet website www.elitepostandpub.com, using the file number assigned to this case 24-69129 to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

Dated: 9/23/2024

**ZBS LAW, LLP , as Trustee**
**30 Corporate Park, Suite 450**
**Irvine, CA 92606**
**For Non-Automated Sale Information, call: (714) 848-7920**
**For Sale Information: (866) 266-7512  www.elitepostandpub.com**

**Ryan Bradford, Trustee Sale Officer**

This office is enforcing a security interest of your creditor. To the extent that your obligation has been
discharged by a bankruptcy court or is subject to an automatic stay of bankruptcy, this notice is for
informational purposes only and does not constitute a demand for payment or any attempt to collect such
obligation.

**Attorney or Party without Attorney:**
Tony Cara, Esq., Bar #170720
CDLG, PC
2973 Harbor Blvd, Suite 594
Costa Mesa, CA 92626
*Telephone No:* 888-615-6765    *FAX No:* 888-660-8874

*Ref. No. or File No.:*

*Attorney for:* Plaintiff

**For Court Use Only**

*Insert name of Court, and Judicial District and Branch Court:*
Sacramento Superior Court

*Plaintiff:* Rachel L Johnson

*Defendant:* JP Morgan Mortgage Acquisition Corp., et al.

| PROOF OF SERVICE Summons & Complaint | Hearing Date: | Time: | Dept/Div: | Case Number: 25CV004759 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons & Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference; Verification of Plaintiff's Complaint.

3. a. *Party served:*                JP Morgan Mortgage Acquisition Corp
   b. *Person served:*            Sarai Marin, Person Authorized to Accept

4. *Address where the party was served:*        CT Corporation System, Agent for Service
                                    330 N. Brand Blvd, Suite 700
                                    Glendale, CA 91203

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Fri., Feb. 28, 2025 (2) at: 10:58AM

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   *on behalf of:* JP Morgan Mortgage Acquisition Corp
   Under CCP 416.10 (corporation)

7. **Person Who Served Papers:**                Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. Bruce Anderson

   d. *The Fee for Service was:*

**1500 W. El Camino Avenue, #510**
**Sacramento, CA 95833**
**855-5VALPRO, Fax (866) 900-4665**
**Valpro** www.ValproAttorneyServices.com
ATTORNEY SERVICES

   e. I am: (3) registered California process server
      (i) Independent Contractor
      (ii) Registration No.:    2016038557
      (iii) County:            Los Angeles

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

   *Date: Fri, Feb. 28, 2025*

                                   (Bruce Anderson)

PROOF OF SERVICE
Summons & Complaint

*tocar.88178*

Ref. No. or File No.:

Attorney for: Plaintiff

Insert name of Court, and Judicial District and Branch Court:
Sacramento Superior Court

Plaintiff: Rachel L JOhnson

Defendant: JP Morgan Mortgage Acquisition Corp., et al.

| **PROOF OF SERVICE**<br>**Summons & Complaint** | Hearing Date: | Time: | Dept/Div: | Case Number:<br>25CV004759 |
|---|---|---|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the Summons & Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference; Verification of Plaintiff's Complaint.

3. a. Party served:                                    Nationstar Mortgage LLC
   b. Person served:                                   Koy Saechao, Person Authorized to Accept

4. Address where the party was served:      CSC Lawyers Incorporating Services,
                                                                  Agent for Service
                                                                  2710 Gateway Oaks Dr, Suite 150 N
                                                                  Sacramento, CA 95833

5. I served the party:
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Thu., Feb. 27, 2025 (2) at: 1:30PM

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   on behalf of: Nationstar Mortgage LLC
   Under CCP 416.40 (association or partnership)

7. **Person Who Served Papers:**                                    Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. John M. Adams

                                                        d. *The Fee for Service was:*

   **1500 W. El Camino Avenue, #510**        e. I am: (3) registered California process server
   **Sacramento, CA 95833**                              (i)   Independent Contractor
   **855-5VALPRO, Fax (866) 900-4665**              (ii)  *Registration No.:*      2014-45
   **www.ValproAttorneyServices.com**              (iii) *County:*                  Sacramento

   Valpro
   ATTORNEY SERVICES

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   Date: Thu, Feb. 27, 2025

                                                                                          (John M. Adams)